UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RIGOBERTO GARCIA ORTIZ,<br><br>Petitioner,<br><br>v.<br><br>BRIAN HENKEY, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; MICHAEL HOLLINGSHEAD, Sheriff of Elmore County,<br><br>Respondents. | Case No.  1:26-cv-00043-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Petitioner Rigoberto Garcia Ortiz's Motion to Enforce

Court Order (Dkt. 11). For the reasons set out below, the Court grants the Motion.

## BACKGROUND

Petitioner's case is part of a deluge of habeas actions resulting from a policy

ORDER - 1

shift by the Department of Homeland Security (DHS) regarding bond hearings for immigrant detainees. Historically, noncitizens potentially subject to immigration detention could be detained under two possible statutes. 8 U.S.C. § 1225 applied to noncitizens "seeking admission into the country"—those apprehended at or near the border—and did not allow for a bond hearing. But noncitizens already established in the United States were detained under 8 U.S.C. § 1226, which provides for discretionary detention with bond hearings to allow the release of detainees who do not pose a danger to the community or flight risk. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). Since July 2025, DHS has attempted to eliminate this distinction by applying § 1225 to all persons who entered the country without inspection, regardless of when they were apprehended or how long they have resided in the United States.

Petitioner is a national of Mexico who has lived in the United States since 2020, though he briefly returned to Mexico for about one month in 2022. He currently resides in Caldwell, Idaho, and has two U.S. citizen children. Dkt. 1 ¶¶ 18, 24, 26. He was taken into custody on January 22, 2025, while attending a sentencing hearing for a misdemeanor charge of driving under the influence. *Id.* ¶¶ 1, 28. This misdemeanor is his only criminal history. Relying on 8 U.S.C. § 1225, Respondents detained him without a bond hearing at the Elmore County Detention Center in Mountain Home, Idaho. *Id.* ¶¶ 1, 17. He filed a Petition for Writ of

ORDER - 2

Habeas Corpus on January 25, 2026, challenging his mandatory detention. The Court granted the Petition and ordered Respondents to either release Petitioner or provide him with an individualized bond hearing. Dkt. 11.

The Immigration Court in Tacoma, Washington held a bond hearing on February 10, 2026. Petitioner was represented by his present counsel and entered evidence to support his bond eligibility, including the birth certificates of his U.S. citizen children and numerous support letters from community members. The Immigration Judge nonetheless denied bond on the basis that Petitioner was a flight risk and danger to the community. The Immigration Judge did not create a record of the proceeding except a generic order denying bond.

Petitioner now argues that the Immigration Judge's decision was unsupported by law or evidence. Because he did not receive a full and fair individualized bond hearing, Petitioner asks the Court to enforce its previous Order by requiring his immediate release from custody.

## LEGAL STANDARD

Federal courts possess continuing jurisdiction to enforce conditional grants of habeas relief. *See Pitchess v. Davis*, 421 U.S. 482, 490 (1975) (*per curiam*). Where a court has issued a conditional grant of habeas relief, the inquiry on a motion to enforce is narrow: whether the respondent has satisfied the condition imposed. If not, the court must effectuate the remedy specified in its prior

order. *See Phifer v. Warden, U.S. Penitentiary, Terre Haute*, 53 F.3d 859, 864 (7th Cir. 1995).

## ANALYSIS

This case emerges from a legal system under strain. Although DHS's reinterpretation of § 1225 has been resoundingly rejected by federal courts, the Government continues to detain scores immigrants under the statute without the opportunity for bond hearings. This recalcitrance has generated a flood of habeas actions that threatens to overwhelm the federal judiciary.[1] Courts have typically resolved these challenges by either simply releasing the petitioner or, as happened here, by ordering a bond hearing. Unfortunately, across the country the integrity of these bond proceedings has now been cast sharply into doubt.

### A. Jurisdiction

The first question is whether this Court has jurisdiction to grant relief. Federal district courts do not have authority to review the bond determination of Immigration Judges. *See* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii). At the same time, courts may ensure that immigration hearings comply with the basic requirements of due process. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). In other words, district courts cannot review discretionary detention decisions but do have

---

[1] *See* Kyle Cheney, *More than 220 Judges Have Now Rejected the Trump Admin's Mass Detention Policy*, Politico (Nov. 28, 2025), https://www.politico.com/news/2025/11/28/trump-detention-deportation-policy-00669861.

jurisdiction to consider related constitutional challenges and enforce court orders. *See Jennings v. Rodriguez*, 583 U.S. 295, 302 (2018); *Demore v. Kim*, 538 U.S. 510, 517 (2003). Put bluntly, the court is not required to countenance a sham.

The Ninth Circuit has held, accordingly, that "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202. Many federal courts in recent months have addressed virtually identical challenges to the adequacy of bond hearings, and the vast majority have recognized jurisdiction. *See, e.g.*, *Anyanwu v. Bondi*, No. C25-995, 2025 WL 3466910, at *3 (W.D. Wash. Oct. 6, 2025), report and recommendation adopted, No. C25-0995, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025); *Rosales v. Simon*, No. 1:26-CV-86, 2026 WL 688858, at *3-4 (E.D. Va. Mar. 11, 2026); *Picado v. Hyde*, No. 26-cv-065, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026); *Shonhai v. Lowe*, No. 3:24-229, 2026 WL 538865, at *10 (M.D. Penn. Feb. 26, 2026); *Zheng v. Rokosky*, No. 26-cv-01689, 2026 WL 800203, at *2-3 (D.N.J. Mar. 23, 2026). Because this matter concerns a due process question and the enforcement of a previous order, this Court reaches the same conclusion.

## B. Administrative Exhaustion

Next, Respondents argue that Petitioner must exhaust administrative remedies through the Board of Immigration Appeals before seeking relief. The

Court finds that exhaustion is not required here.

Exhaustion in the habeas context "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Nevertheless, even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Faced with a wave of similar habeas actions, federal courts have divided on whether to require exhaustion when a petitioner disputes the fairness of § 1226(a) bond hearing. The District of Rhode Island, for example, held that exhaustion was unnecessary due to likely futility and the irreparable injury of prolonged ICE detention: "This Court will not require [Petitioner] to sit in an ICE detention

ORDER - 6

facility for six months while he awaits a BIA decision." *Picado*, 2026 WL 352691, at *5-6; *see also Rosales*, 2026 WL 688858, at *5; *Zheng*, 2026 WL 800203, at *3. On the other hand, the Eastern District of California concluded that the *Puga* factors "strongly weigh in favor of requiring exhaustion" based on the "fact-intensive inquiry involved in reviewing individual bond determinations" and risk of "encourage[ing] others to immediately seek habeas review." *Fernandez Vasquez v. Cruz*, 2025 WL 252055, at *3 (E.D. Cal. Jan. 30, 2026).

This Court finds the reasoning of the District of Rhode Island persuasive. Particularly given the broader irregularities in bond hearings across the country— discussed further below—administrative remedies in the immigration system appear no longer efficacious. *See Chavez Ochoa v. Mason*, No. 2:26-CV-00130, 2026 WL 541144, at *2 n.4 (S.D.W. Va. Feb. 26, 2026). Petitioner has been detained for almost four months. Mandating administrative exhaustion would be a "futile gesture" that prolongs this injury without creating a meaningful opportunity for the agency to correct its mistake. The Court will waive administrative exhaustion requirements.

## C. Merits

Finally, the Court turns to the merits and concludes that Petitioner's bond hearing was fundamentally unfair.

Aliens in removal proceedings receive the full protections of the Due

ORDER - 7

Process Clause of the U.S. Constitution. *See Singh*, 638 F.3d at 1204. In a constitutionally valid bond hearing, an alien "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf . . . ; and (3) has the right to an individualized determination of his [or her] interests." *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005) (ellipses and alteration in original). The third factor—an individualized determination—was also explicitly incorporated into this Court's Memorandum Decision & Order. *See* Dkt. 11 at 5. On this count, Petitioner's February 2026 bond hearing failed to comply with the requirements of both due process and the Order of the Court.

At the bond hearing, Petitioner had the burden of proving that he was not a danger to the community or a flight risk. He submitted *iCourt* information establishing that his only criminal history was a misdemeanor DUI in August 2025, for which he was sentenced to 180 days in jail with 179 suspended and 1 day credit for time served. Dkt. 19-5.  He also submitted proof of his compliance with alcohol education requirements and numerous letters of support from community members. As to flight risk, Petitioner submitted evidence including his family ties to Idaho, consistent filing of taxes, steady employment, and compliance with criminal court conditions when released on bond for his DUI. The only evidence from the Government was an I-213 form ("Record of Deportable/Inadmissible

Alien") from 2022, when Petitioner was apprehended by Border Patrol in Corpus Christi, Texas. Dkt. 23. The I-213 form noted that Petitioner had no criminal history and was granted a voluntary return to Mexico.

But in concluding that Petitioner was a danger to the community, the Immigration Judge did not rely on the evidence in the record. Rather, the Immigration Judge invoked the police report regarding Petitioner's DUI, which neither Petitioner nor the Government entered as evidence. *See* Dkt. 19-2. Because Petitioner had the burden of proof, the Immigration Judge apparently decided to assume that the contents of the police report would have indicated Petitioner's dangerousness. In other words, Petitioner could prove his non-dangerousness only by rebutting evidence that the court had neither admitted nor examined.

This logic strains credulity. The fact that a party bears the burden of proof does not mean that he or she must rebut all evidence that *might* exist. Because the police report was not part of the record, the Immigration Judge's determination of dangerousness was pure speculation. This form of unjustified inference certainly creates the appearance that the Immigration Judge was looking to rationalize a preordained decision to deny bond rather than conducting a genuine individualized assessment of Petitioner's circumstances.

Another concerning irregularity is that the bond hearing was not recorded. Under 8 C.F.R. § 1003.36, the Immigration Court must create the "Record of

Proceeding." But the Immigration Judge did not record the hearing or create a written transcript. The only record from the hearing is a form order denying bond, with zero explanation for the findings that Petitioner is a flight risk and danger to the community. The Court's present analysis has instead relied on Petitioner's counsel's affidavit regarding the events at the hearing, which the Government has not disputed. *See* Dkt. 19-2. The lack of record keeping further calls the fairness of the proceedings into question.

Petitioner has also submitted evidence that Immigration Judges across the country are systemically denying bond to alien detainees, regardless of the weight of the evidence. For example, a former legal counsel to Immigration and Customs Enforcement describes how Immigration Judges in the Eastern District of Virginia have "abruptly and uniformly ceased" granting bond in post-habeas cases. Dkt. 19-6 at 2. Courts have echoed these concerns. The Southern District of West Virginia noted evidence that "immigration judges who provide neutral adjudications have been removed, and bond is systematically denied after a pro forma hearing with a predetermined outcome." *Chavez Ochoa*, 2026 WL 541144, at *2 n.4. The District of New Jersey similarly observed "an established pattern of Respondents violating judicial orders." *Zheng*, 2026 WL 800203, at *5. Although the District of Idaho has fortunately not experienced the "flagrant[] disregard[]" for court orders that has occurred in other districts, *see id.*, this pattern casts serious doubt on the integrity

ORDER - 10

of Petitioner's bond hearing in Washington.

All told, it is clear that Petitioner did not receive an individualized hearing in accordance with this Court's Order. In reaching this conclusion, the Court has not weighed evidence or assessed credibility—decisions committed to the discretion of the Immigration Judge. Rather, the conduct of the proceedings shows that the Immigration Judge did not truly consider the evidence before him. This "rubber-stamp" denial is a violation of due process and of this Court's previous Order. *See Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001).

It is also clear that a second bond hearing would not remedy the legal violation. *See Perez Sierra v. Margolin*, No. 25-18829, 2026 WL 800158, at *4 (D.N.J. Mar. 23, 2026). Given Petitioner's minimal criminal history and strong ties to the United States, the Court finds that release is the appropriate remedy for his unlawful custody. This decision is consistent with the Court's prior rulings in similar habeas actions.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that

1. Petitioner's Motion to Enforce Court Order (Dkt. 11) is **GRANTED**.
   Respondents must immediate release Petitioner from custody.

2. Petitioner's unopposed Motion to Seal Exhibits C & D is **GRANTED**. The

Court finds compelling reason to SEAL the exhibits submitted at Dkt. 22 and Dkt. 23.

DATED: April 7, 2026

B. Lynn Winmill
U.S. District Court Judge

ORDER - 12